IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| TANISHA STALLWORTH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 13-00202-KD-N |
| | ) | |
| GUYOUNG TECH USA, INC., and | ) | |
| JIN RAE CHO, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This action is before the Court on the motion for summary judgment, brief in support of the motion, suggested determinations of undisputed facts and conclusions of law, and evidentiary material filed by defendants Guyoung Tech USA, Inc. and Jin Rae Cho (the defendants) (docs. 32-35); the response in opposition to the motion and brief in support, the response to the suggested determinations of undisputed facts and conclusions of law, and evidence in support filed by plaintiff Tanisha Stallworth (doc. 41-44;) and the defendants' reply (doc. 45). Upon consideration, and for the reasons stated herein, the defendants' motion for summary judgment is **GRANTED** as to Count I against defendant Guyoung Tech USA, LLC. Stallworth's remaining state law claims against the defendants as set forth in Counts III through VII of the Amended Complaint are **dismissed without prejudice**. [1]

**I. Background**

---

[1] Defendants move the Court to strike Stallworth's "extrapolations" from the summary judgment order in *Hill v. Guyoungtech USA, Inc., and Hyo Sang Lee*, 2008 WL 4073638 (S. D. Ala. Aug. 26, 2008), numerous pages and paragraphs from the pleadings and deposition testimony, and Robert Bowman's affidavit in the *Hill* case offered by Stallworth. (Doc. 46) The motion is denied.

On April 18, 2013, Stallworth filed her complaint against defendants Guyoung Tech USA, Inc. (Guyoung Tech) and Jin Rae Cho (Cho). (Doc.1)  Stallworth brought Count I for hostile environment based on sex and Count II for retaliation alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–2(a)(1). Stallworth also brought state law claims of negligent supervision (Count III) and wanton supervision (Count IV) against defendant Guyoung Tech only and state law claims for invasion of privacy (Count V), outrage (Count VII), and assault and battery (Count VII) against defendants Cho and Guyoung Tech. The parties stipulated to the dismissal of Stallworth's claim for retaliation as pled in Count II. (Doc. 31)  Defendants have now filed their motion for summary judgment as to Stallworth's remaining claims.

**II. Findings of Fact**[2]

Guyoung Tech operates a welding facility and automotive parts supplier in Castleberry, Alabama.  At all relevant times, Guyoung Tech included its "Policy Against Harassment" in the Employee Handbook. (Doc. 34-1, p. 6-7)  The Policy defines sexual harassment and includes in that definition, "verbal or physical conduct perceived as sexual in nature . . . when . . . [s]uch conduct has the purpose or effect of unreasonably interfering with the individual's job performance or creating an unfriendly or offensive work environment." (Id., p. 7)  As to reporting, the Policy provides as follows:

> Any incident of harassment must be reported to the employee's supervisor.  If the supervisor is unavailable or the employee believes it would be inappropriate to contact that person, the employee should contact the Human Resources Manager.  Any supervisor or manager who becomes aware of possible sexual

---

[2] The Court has made its findings of facts by "view[ing] the facts and draw[ing] all reasonable inferences in the light most favorable to the nonmoving party." *Goodman v. Kimbrough,* 718 F.3d 1325, 1331 (11th Cir.2013).

or other unlawful harassment should promptly advise the Human Resources Manager.

(Id., p. 8)

In May 2012, Guyoung Tech hired Stallworth to work as an operator on the small press line. Stallworth received a copy of the Employee Handbook when she was hired and knew that she could report harassment to her supervisor or the Human Resources Manager. On or about June 21, 2012, she transferred to the A&C frame line, a welding line where headrest parts are made. At all relevant times, Cho was Vice-President of Guyoung Tech and a supervisor. Stallworth did not frequently interact with Cho, but had seen him walk through the plant.

On Thursday, June 28, 2012, Stallworth was working on the A&C frame line loading parts into the welding machine. "Cho came up behind Stallworth and began to explain how the parts should be on her machine and took one of his hands and placed it on Stallworth's right butt cheek." (Doc. 43, p. 8, Stallworth's Suggested Findings of Fact) "Stallworth backed away from Cho and she asked her co-worker, Alejandra, to go over to Cho and see what he was saying." (Id., p. 9) "Cho begged Stallworth to come back to the machine, so she did, and he began again to explain about the parts on her machine." (Id.) "When Cho finished his explanation he took his hands and patted both of Stallworth's butt cheeks, smiled, and put his thumb up." (Id.)[3]

On Saturday, June 30, 2012, Stallworth reported this incident to Brad Dees who took over as team leader when Robert Bowman, the plant production manager, was not there. He

---

[3] Stallworth alleges that her co-workers Alejandra (last name unknown), Keyon Thompson, Clifton Montgomery and Ashley Kyles "saw what Cho did" and that Thompson had a video on his cell phone. (Doc. 43, p. 9) Stallworth did not provide the Court with their sworn affidavits or the video to support her allegations.

told her "that's their culture; that ain't the first time Mr. Cho did that and won't be the last." "Dees then laughed and told Stallworth to pray about it" and "if she still felt uncomfortable that she should talk to HR when they got back that Monday." (Id., p. 10)

In contrast, Dees testified that this conversation occurred on Friday, July 6, 2012. (Doc. 41-3, p. 4) Dees denied telling Stallworth "that that is their culture, that ain't the first time Mr. Cho did that, and that won't be the last." (Id. p. 7) He admitted he "briefly laughed" but Stallworth "still seemed upset" and he told her that if she was still feeling uncomfortable, to talk with Human Resources when they returned on Monday. (Id.) Dees did not know of any other person who complained about having their butt grabbed by the South Korean managers. (Id.)

"During the week of the line shutdown, Stallworth saw Cho grab Ashley Kyles' butt." (Doc. 43, p. 11) Stallworth does not specify when the line was shutdown but it appears to have occurred during the week of July 4, 2012.

"On July 3, 2012, Stallworth went through the main offices to look for numbers to call to complain. Stallworth saw only numbers and Korean writing that she did not understand. Stallworth went into Bowman's office, but Bowman was not there. Stallworth saw Courtney Riley, the supervisor for Quality Control, and asked him where she could find a phone number to file a complaint about Cho sexually assaulting her. Riley asked whom Stallworth needed to call. Stallworth said either Leigh Ross in Human Resources or Robert Bowman. Riley told Stallworth that he could not give out cell or home numbers and that she would have to wait until everybody came back on July 9, 2012." (Doc. 43, p. 11)

Riley testified that Stallworth approached him stating that "[s]he felt that she was brushed up against by one of our office employees" but they "didn't go over the specifics".

4

Riley then directed "her to the chain of command, which would be a supervisor and the HR manager." Riley had no knowledge of any of the South Korean managers grabbing anyone's butt. (Doc. 41-8, p. 8-10)

"On Friday, July 6, 2012, Stallworth asked Greg Gray, a team leader/manager, if they ever had a problem with Cho touching women's butts. Mr. Gray told her yes, 'you ain't the first and you won't be the last.'" (Id., p. 11-12) "On July 7, 2012, Stallworth asked co-worker Tamara McIntosh if she knew whether Cho had ever touched any women's butts before. Tamara told Stallworth that Mr. Cho had grabbed her butt before." (Id. p. 12).[4]

On July 9, 2012, Stallworth went to Human Resources and told Leigh Ross, Human Resources Manager, about the incident and filled out an incident report. Stallworth reported as follows:

> On June 28, 2012, Mr. Jo grabbed my butt on two occasions that day. He was trying to explain how to run parts on the line and he held my right cheek of my butt. I moved back and then he beckoned for me to come back. He began explaining about the machine and when he got ready to walk off, he took his hands and patted both butt cheeks and smiled and put his thumb up. Witnesses who saw it happen were Keyon, Alejandra, Ashley Kyles, and Clifton Montgomery.

(Doc. 43, p. 12-13)

Guyoung Tech had never received any report or complaint either prior to the June 28, 2012 incident or afterward that Cho had touched anyone in a sexually inappropriate manner or otherwise engaged in any unwelcome sexually inappropriate conduct toward anyone. (Doc. 34-1, Ross declaration, p. 3)

---

[4] Stallworth did not provide the Court with McIntosh's sworn statement, thus there is no indication that this would admissible evidence at trial.

5

Bowman heard from Riley, that Cho may have touched Stallworth's buttocks and conveyed this information to Ross who had already spoken with Stallworth. (Doc. 35, p. 5) The same day, Bowman, Ross, Cho, and Moo Chan Lee who was the President of Guyoung Tech at that time, met in Lee's office and discussed the incident. Cho stated he "might have touched" Stallworth while he "was passing her in a narrow area." (Doc. 41-2, Cho deposition, p. 21) Ross ultimately determined that Cho had touched Stallworth accidentally and not in a sexually inappropriate manner. (Doc. 34-1, Ross declaration, p. 3)

Later that day, Bowman[5] and Sophia Dukes, Assistant Production Manager, met with Stallworth. (Doc. 43, p. 13) Bowman told Stallworth that Ross had told him about the incident. He asked Stallworth to explain what happened and she told him "Cho had touched her inappropriately twice." (Id. p. 14) Stallworth was upset and offended, and "did not believe this was an accidental touching." (Id.)[6]

After the meeting, Cho returned to the plant floor, "looked at Stallworth, made an ugly face, started hitting himself on his head, and then walked off." (Doc. 43, p. 17) The next day, July 10, 2012, Stallworth spoke to Bowman about Cho's behavior and explained that "she was

---

[5] Bowman testified that "a few years back", he and Cho "were joking around, something to do with the kids, and he had reached and touched my crotch area jokingly. I just, I told him, man, it wasn't appropriate and not to do it, you know, he never did it again." (Doc. 41-4, p.14) Bowman testified that he was not offended or upset. He also testified that no other Korean manager had ever touched him.

[6] Stallworth stated that during this meeting, Dukes said that "Cho would come around and rub her back and then sometimes his hand would do down to touch her butt." (Doc. 43, p. 15) However, when Dukes was deposed, she testified as follows: "Q. Did you say anything at this meeting? A. Well, [Stallworth] asked me a question had I been touched by one of the Korean staff, and I told her no." (Doc. 41-5, p. 10) When Bowman was deposed about the meeting, he testified as follows: "Q. Did Sophia Dukes say that Mr. Cho would come around and grab her back sometimes? A. No, I don't remember her saying that. Q. Did Ms. Dukes say anything about Mr. Cho touching her? A. No." (Doc. 41-4, p. 17-18)

6

half scared to come into work this morning." (Id.) Bowman assured Stallworth that Cho was not angry and that he would not harm her. (Id.)

On July 10, 2012, Cho was directed by Ross to complete retraining on the company's anti-harassment policy, to reiterate, reaffirm, and remind him of the Policy Against Harassment and what could be considered sexual harassment, such as an inappropriate touching. Cho was reminded that he was not to touch anyone on the buttocks or otherwise touch anyone in a sexually inappropriate manner. (Doc. 34-1, Ross Declaration) That same day, Cho signed an acknowledgement that he had received the training on sexual harassment in the workplace. (Doc. 34-1, p. 8)

On July 11, 2012, Stallworth left work at 11:00 a.m. because her son was ill. She made a doctor's appointment for her son for the next day and also made an appointment for herself because of stress, fatigue and "nightmares of Mr. Cho coming to get her." (Doc. 43, p. 18) The doctor gave her a "prescription to go home, get some rest and return to work on July 15, 2012." (Id.) Stallworth did not return to work but called in several times. Then, on July 24, 2012, during a telephone conversation with Bowman, she was told that her services were no longer needed. Stallworth conceded that she was subject to a 90-day probation period during which unexcused absences and tardies could be grounds for termination.

**III. Conclusions of Law**

**A. Summary judgment standard**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a party raises the assertion "that a fact cannot be or is genuinely disputed", the party must

> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A)(B).

Defendants, as the parties seeking summary judgment bear "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Clark,* 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986)).

Once the defendants have satisfied their responsibility, the burden shifts to Stallworth, as the non-movant, to show the existence of a genuine issue of material fact. *Id*. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determination of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S. Ct. 2505 (1986)); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-159, 90 S. Ct. 1598, 1608-1609 (1970). However, "[a] moving party is entitled to summary judgment if the nonmoving party has 'failed to make a sufficient showing on an

8

essential element of her case with respect to which she has the burden of proof.'" *In re Walker*, 48 F. 3d 1161, 1163 (11th Cir. 1995) (quoting *Celotex Corp.*, 477 U.S. at 323, 106 S. Ct. at 2552). Overall, the court must "resolve all issues of material fact in favor of the [non-movant], and then determine the legal question of whether the [movant] is entitled to judgment as a matter of law under that version of the facts." *McDowell v. Brown*, 392 F.3d 1283, 1288 (11th Cir. 2004) (citing *Durruthy v. Pastor*, 351 F.3d 1080, 1084 (11th Cir. 2003)).

However, the mere existence of any factual dispute will not automatically necessitate denial of a motion for summary judgment; rather, only factual disputes that are material preclude entry of summary judgment.*Lofton v. Secretary of Dept. of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004). "An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. It is genuine if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010) (citation omitted).

### IV. Analysis

### A. Count I - Hostile environment sexual harassment[7]

Defendants argue that Stallworth cannot make her prima facie case to establish a sexually hostile work environment because the alleged incidents if proven were not sufficiently severe or pervasive to alter the terms and conditions of her employment and create a discriminatorily abusive working environment. Defendants argue that Cho's alleged conduct on June 28, 2012 was not pervasive in that only two touchings occurred that day and that the

---

[7] In her response, Stallworth states that supervisors or managers at Guyoung Tech had yelled or hollered at the employees. However, she did not allege that Cho yelled or hollered at her. (Doc. 18, amended complaint)

touchings were not severe. Defendants point out that Cho's conduct did not alter Stallworth's working conditions and that she worked without incident or further complaints regarding Cho. They also argue that Stallworth's alleged evidence that she saw Cho touch Ashley Kyle's butt does not bolster her claim that Cho's conduct was severe or pervasive.

Stallworth argues that she has shown that Cho grabbed her butt, that Cho has grabbed other female butts, and that the South Korean managers at Guyoung Tech have a problem with grabbing female employee's butts. She argues that the series of incidents by Cho or by other South Korean managers were sufficiently continuous and concerted to alter the conditions of her working environment and for all female employees at Guyoung Tech.

"Title VII prohibits employers from sexually harassing employees and thereby creating a hostile work environment." *Arafat v. School Bd. of Broward County*, 549 Fed. Appx. 872, 874 (11th Cir.2013) (citing *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir.2010) (en banc)). To sufficiently plead her prima facie case, Stallworth "must allege that (1) she belongs to a protected group, (2) she has been subject to unwelcome harassment, (3) the harassment was based on her gender, (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment, and (5) there is a basis for holding the employer liable." *Arafat,* 549 Fed. Appx. at 874-875 (citing *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir.1999) (en banc)). "[T]he evidence of harassment is considered both cumulatively and in the totality of the circumstances." *Reeves*, 594 F.3d at 808. Also, "[e]ither severity *or* pervasiveness is sufficient to establish a violation of Title VII." *Id*. (italics in original).

The fourth element requires Stallworth to prove her "environment was both subjectively and objectively hostile." *Id*. at 809. In that regard, she must "'subjectively perceive' the

harassment as sufficiently severe and pervasive to alter the terms or conditions of her employment, and her subjective perception must be objectively reasonable." *Id.* (citation omitted). "[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.' " *Id*. (citation omitted). "In evaluating allegedly discriminatory conduct," the district court considers "its 'frequency . . .; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"*Id*., at 808-809 (citation omitted) Overall, the test is whether "members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Id.*, at 808.

On motion for summary judgment, the Court must accept Stallworth's "version of the facts as true," *Kingsland v. City of Miami,* 382 F.3d 1220, 1227 (11th Cir.2004), and draw all reasonable inferences in her favor. Thus, the Court finds that there is no dispute of fact that Stallworth is a member of a protected group, that Cho touched her buttocks twice and this conduct was unwelcome, and that his harassing conduct was based on her gender.[8]

However, the Court finds that Stallworth is unable to establish the fourth element of her prima facie case. As to Stallworth's subjective perception, she alleges that her doctor prescribed two days of home rest for the stress and fatigue resulting from nightmares that Cho was "coming to get her." (Doc. 43, p. 18) Stallworth was upset by the incident and spoke to

---

[8] Stallworth alleged and Bowman testified that Cho had grabbed Bowman in his crotch several years earlier. Thus, perhaps, the grabbing may not have been based on Stallworth's sex. Stallworth, as the plaintiff seeking to establish a hostile environment claim based on sex, "must always prove that the conduct at issue was not merely tinged with offensive connotations, but actually constituted discrimination because of sex." *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 80–81. 118 S.Ct. 998 (1998).

Bowman about Cho's behavior, explaining that "she was half scared to come into work", the morning of July 10, 2012. Thus, she subjectively perceived that the harassment was severe enough to alter the terms and conditions of her employment. However, "a plaintiff's subjective feelings and personal reactions are not the complete measure of whether conduct is of a nature that it interferes with job performance. If it were, the most unreasonably hypersensitive employee would be entitled to more protection than a reasonable employee, and the standard would not have an objective component." *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 586 (11th Cir. 2000) *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53 (2006)).

Analyzing the severity of the incidents from the perspective of a reasonable person in Stallworth's position, and considering the totality of the circumstances, the Court finds that she has failed to establish the objective component. Arguably, Cho touching Stallworth's butt in front of her co-workers may have been humiliating. However, the June 28, 2012 touching incident and the incident where Stallworth saw Cho hit himself in the head and make an ugly face toward her on July 10, 2012, are not conduct that was frequent, severe, or physically threatening, or of a nature that would unreasonably interfere with Stallworth's work performance. Additionally, Stallworth left work at 11:00 a.m. on July 11, 2012 and did not return. Thus, she had no further contact with Cho.

Between June 28, 2012 and July 9, 2012, Stallworth saw Cho touch Kyles' butt, heard from McIntosh that Cho had grabbed her butt, was told by Dees and Gray that Cho and other Korean managers engaged in butt grabbing, was told by Dukes that Cho had rubbed her back

12

and touched her butt, and was told by Bowman that years ago, Cho had grabbed his crotch.[9]
The time period for these alleged instances of inappropriate contact is not clear. However, Stallworth only suffered the one event on one day. A reasonable person could not find this to be so severe or physically threatening as to unreasonably interfere with Stallworth's work performance. *See Garriga v. Novo Nordisk Inc.*, 390 Fed. Appx. 952 (11th Cir. 2010) (finding that "boorish conduct, alleged to have occurred on nine days over a period of five months" was not objectively reasonable); *Gilliard v. Georgia Dep't of Corr.,* 500 Fed. App'x 860 (11th Cir.2012) (harassment lasting for one week during an eleven month employment was not sufficiently severe or pervasive to alter the terms and conditions of employment and state a claim under the Americans with Disabilities Act); *Dar Dar v. Associated Outdoor Club, Inc.,* 248 Fed. Appx. 82 (11th Cir. 2007) (The two instances of employees touching Dar Dar's buttocks—in one of which the toucher was a woman in her seventies—and the two risque comments are no more serious than the conduct we held did not establish a hostile work environment in *Gupta.*") (reh. denied, 255 Fed. Appx. 502 (11th Cir. 2007) (table opinion)).

Stallworth cannot establish the fourth element of her prima facie case for hostile work environment based on sex. Therefore, defendant Guyoung Tech is entitled to summary judgment as to Count I.

**B. Stallworth's state law claims.**

Pursuant to 28 U.S.C. § 1331, the Court has jurisdiction to decide Stallworth's claims

---

[9] For purposes of summary judgment only, and accepting as true Stallworth's version of the facts, even though Dees, Gray, and Dukes do not recall making those statements, their alleged statements may fall under an exception to the hearsay rule. Fed. R. Evid. 801(d)(2)(D) provides that an opposing parties' statement, offered against the opposing party, that "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed" is not hearsay.

under Title VII in Count I. Section 1331 provides the district courts with original jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States." The Court is also given the additional authority to exercise supplemental jurisdiction over Stallworth's state law claims in Counts III through VII if they are "are so related to claims in the action ... that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

Although § 1367(a) gives the Court supplemental jurisdiction over the state law claims, 28 U.S.C. § 1367(c)(3), provides that "the district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." In that regard, the Court of Appeals for the Eleventh Circuit "ha[s] encouraged district courts to dismiss any remaining state claims when . . . the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) (per curiam). *See also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); *Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999) ("[T]his Court has noted that 'if the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of state claims.' " (quoting *L.A. Draper & Son v. Wheelabrator–Frye, Inc.,* 735 F.2d 414, 428 (11th Cir. 1984) (citing *Gibbs,* 383 U.S. at 726))); *Dockens v. Dekalb Cnty. Sch. Sys.,* 441 Fed. Appx. 704, 709 (11th Cir. 2011) (per curiam) ("Once the district court properly granted summary judgment for the School System on the FMLA claims, no federal claims remained. It was not abuse of

14

discretion for the court to decline supplemental jurisdiction over the state law claim.").[10]

The Court has now granted summary judgment in favor of defendant Guyoung Tech as to Count I, which formed the basis for the Court's original jurisdiction. Therefore, upon consideration, the Court declines to exercise supplemental jurisdiction over the remaining state law claims against defendants Guyoung Tech and Cho. Accordingly, Counts III through VII are **DISMISSED without prejudice**. *See, e.g., Ingram v. Sch. Bd. of Miami-Dade Cnty.*, 167 Fed. Appx. 107, 109 (11th Cir. 2006) (per curiam) ("When a court decides not to exercise supplemental jurisdiction under § 1367(c)(3) because only state claims remain, the proper action is a dismissal without prejudice so that the complaining party may pursue the claim in state court. *Crosby v. Paulk*, 187 F.3d 1339, 1352 (11th Cir. 1999) ('If he decides to dismiss these state-law claims, then they should be dismissed without prejudice so that the claims may be refiled in the appropriate state court.')").

## V. Conclusion[11]

Upon consideration of the evidence and for the reasons set forth herein, the Court finds

---

[10] As to the applicable statutes of limitation, 28 U.S.C. § 1367(d) provides that "[t]he period of limitations for any claim asserted under subsection (a) . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." *See Roden v. Wright*, 611 So. 2d 333 (Ala. 1992) (finding that pursuant to 28 U.S.C. § 1367(d), Roden timely filed his suit in state court within thirty days of the order entering summary judgment on Roden's § 1983 claims in federal court); *Martinez v. City of Orlando,* 2009 WL 3048486, at *2 (M.D. Fla. Sept. 21, 2009) ("28 U.S.C. § 1367(d) provides that the statute of limitations is tolled while state law claims are pending in federal court until thirty days after an order of dismissal. Therefore, Plaintiff may pursue her state claims in state court if she so chooses, as long as she files in a timely manner."); *Lewis v. DeKalb Cnty. Bd. of Educ.,* 2013 WL 6073519, at *8 (N.D. Ala. Nov. 18, 2013); *Gainor v. Douglas Cnty., Ga.,* 59 F. Supp. 2d 1259, 1296 (N.D. Ga. 1998). Dismissal of Stallworth's remaining state law claims will not prejudice her ability to timely re-file in state court.

[11] The practice of filing motions to reconsider has become commonplace. Considering the heightened burden that must be met for the Court to reconsider, the Court has found most such motions to be a waste of the Court's and the parties' resources.

that defendant Guyoung Tech is entitled to judgment as a matter of law as to Stallworth's claim of hostile environment based on sex under Title VII as alleged in Count I. *See McDowell v. Brown*, 392 F.3d 1283, 1288 (11th Cir. 2004) (having resolved all issues of material fact in favor of the non-movant, the court must "then determine the legal question of whether the [movant] is entitled to judgment as a matter of law under that version of the facts.") (citation omitted). Accordingly, the motion for summary judgment is **GRANTED** as to Count I against defendant Guyoung Tech. Stallworth's remaining state law claims against defendants Guyoung Tech and Cho as set forth in Counts III through VII of the Amended Complaint are **dismissed without prejudice**.

Judgment shall be entered by separate document as provided in Rule 58 of the Federal Rules of Civil Procedure.

DONE and ORDERED this the 30th day of May 2014.

s/ Kristi K. DuBose
KRISTI K. DuBOSE
UNITED STATES DISTRICT JUDGE